# CITY OF NEW LONDON *v.* FOSS AND BOURKE, INC.
## (AC 23707)

Schaller, West and McLachlan, Js.

Argued June 1—officially released September 28, 2004

*C. George Kanabis*, with whom, on the brief, was *Renee Marie Houle*, for the appellant (defendant).

*Edward B. O'Connell*, with whom, on the brief, was *David P. Condon*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, Foss and Bourke, Inc., appeals from the judgment of the trial court in a condemnation proceeding involving the taking of property in New London. Specifically, the defendant claims that the court improperly (1) determined that certain tangible and intangible personal property was not part of the condemned real estate, (2) denied its appraisal fees, attorney's fees and costs, (3) determined the fair market value of the condemned property by not including certain trade fixtures and (4) failed to find that the plaintiff condemnor, the city of New London, was unable to relocate the business of the defendant.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The defendant was the owner of real property at 82 and 95 Trumbull Street, New London. The defendant was engaged in the wholesale and retail sales and distribution of seafood and related products. The plaintiff commenced its condemnation action pursuant to chapter

132 of the General Statutes on October 24, 2000, by filing a statement of compensation with the clerk of the judicial district of New London to acquire property known as 82 Trumbull Street, New London. The plaintiff determined that the property had a fair market value of $336,000, deposited that sum with the clerk and took title to the subject property.

The defendant filed an appeal and application for review of the statement of compensation in the trial court. The defendant claimed to be aggrieved and denied just compensation for the property taken. The defendant filed an amended appeal, claiming that certain personal property alleged to be fixtures was taken without any compensation. The plaintiff denied that it had taken any property other than the subject real property and specifically denied that it had taken the alleged trade fixtures. The case was tried to the court in August, 2002, which rendered judgment increasing the amount of compensation.

I

The defendant first claims that the court improperly determined that certain tangible and intangible personal property was not part of the condemned real estate and, therefore, was noncompensable. Specifically, the defendant argues that the court improperly determined that (1) Connecticut had not implicitly adopted the assembled economic unit doctrine, and (2) the defendant's personal property and fixtures were not part of an assembled economic unit for which it is entitled to compensation.[1] We disagree.

We begin our analysis by setting forth the general principles that govern the taking of real property by

[1] Because we conclude that Connecticut has not implicitly adopted the assembled economic unit doctrine, we do not reach the second part of the defendant's argument concerning whether its personal property and fixtures were part of an assembled economic unit and the valuation of such property.

eminent domain. "The fifth amendment to the United States constitution, as applied to the states through the due process clause of the fourteenth amendment . . . provides that 'private property [shall not] be taken for public use, without just compensation.' U.S. Const., amend. V. Article first, § 11, of the Connecticut constitution similarly provides that '[t]he property of no person shall be taken for public use, without just compensation therefor.' This constitutional principle is well reflected throughout the General Statutes and our case law." *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 256 Conn. 813, 827–28, 776 A.2d 1068 (2001) "[T]he question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken. . . .

"We have stated repeatedly that [t]he amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking. . . . In determining market value, it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land. . . .

"[B]ecause each parcel of real property is in some ways unique, trial courts must be afforded substantial discretion in choosing the most appropriate method of determining the value of a taken property." (Citations omitted; internal quotation marks omitted.) Id., 828–29. Likewise, the question as to whether a particular piece of property is personalty or a fixture is a question of fact, and our review is limited to deciding whether the findings of the court were clearly erroneous. *ATC Partnership* v. *Windham*, 268 Conn. 463, 479, 845 A.2d 389 (2004).

Here, the court determined that fixtures, "as defined by our Connecticut courts . . . such as doors, windows, cement floors, masonry loading docks, insulation, Sheetrock [and] metal stud framing . . . were an integral part of the building and [were] included in the fair market value given for the same." The court further concluded that the remaining items involved in the business "are not fixtures and thereby part of the real estate, and have not been acquired or condemned by the [plaintiff] in this proceeding. For that reason, no separate value will be assigned to any of those items."

The defendant argues that Connecticut implicitly has adopted the assembled economic unit doctrine, "a principle of Pennsylvania state law which requires the state to include in eminent domain awards an allowance for machinery, equipment and fixtures which cannot be economically moved to a new location." *Pou Pacheco* v. *Soler Aquino*, 833 F.2d 392, 400 (1st Cir. 1987). On the basis of the assembled economic unit doctrine, the defendant contends that the court should have considered the fact that the plaintiff was unable to relocate the defendant's business and, as a consequence, the defendant suffered a loss that included trade fixtures and personal property utilized in the business. The defendant urges us to define trade fixtures at the 82 Trumbull Street property as all of the items that were integrally related to the defendant's wholesale seafood business and were especially adapted for that use.

The defendant's argument is unavailing. Our Supreme Court has consistently stated: "To constitute a fixture, it is essential that an article should not only be annexed to the freehold, but that it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaptation of the article annexed to the uses and purposes to which [the realty] was appropriated at the time the annexation was made, and the relation of the

party making it to the property in question, that a permanent accession to the freehold was intended to be made by the annexation of the article." (Internal quotation marks omitted.) *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 215–16, 477 A.2d 988 (1984); see also *Vallerie* v. *Stonington*, 253 Conn. 371, 372, 751 A.2d 829 (2000).

In determining whether a particular piece of property was personalty or a fixture, the court in this case conducted the traditional legal analysis. No Connecticut court has adopted the assembled economic unit doctrine. Although Pennsylvania is the only state that has adopted it, a number of sibling states have rejected it. See *Masheter* v. *Boehm*, 37 Ohio St. 2d 68, 76–77 n.2, 307 N.E.2d 533 (1974) (states rejecting doctrine include New York, Ohio, New Hampshire, Alabama, Delaware, Florida, Indiana, Maryland, Oklahoma, West Virginia). All of the Connecticut cases that the defendant relies on consistently apply the principle that just compensation in an eminent domain action is based on the market value of the condemned property and in accordance with the traditional fixture analysis. See *Wronowski* v. *Redevelopment Agency*, 180 Conn. 579, 584–85, 430 A.2d 1284 (1980); *Stanley Works* v. *New Britain Redevelopment Agency*, 155 Conn. 86, 100–102, 230 A.2d 9 (1967); *Harvey Textile Co.* v. *Hill*, 135 Conn. 686, 689–90, 67 A.2d 851 (1949). Accordingly, we conclude that the court properly determined that Connecticut has not implicitly adopted the assembled economic unit doctrine.

II

The defendant next claims that the court improperly denied the defendant appraisal fees, attorney's fees and costs. We disagree.

The defendant filed a motion for articulation with respect to the court's decision. It specifically requested

that the court articulate its decision in the following areas: "(1) An order granting or denying the defendant's request for appraisal fees; (2) An order granting or denying the defendant's request for expert witness fees; (3) An order granting or denying interest on the deficiency awarded to the defendant; (4) An order granting or denying costs to the defendant." The court denied the defendant's motion for articulation without opinion. The defendant did not file a motion for review of the court's denial of the motion for articulation.

"[W]here a party is dissatisfied with the trial court's response to a motion for articulation, he may, and indeed under appropriate circumstances he must, seek immediate appeal . . . to this court via the motion for review. . . . Our rules provide a procedure for clarifying the record when rulings of the trial court are unclear. . . . In addition, our rules provide a procedure for reviewing the adequacy of the trial court's response to a motion for articulation. . . .

"Even if we assume the validity of this claim, proper utilization of the motion for articulation [and the motion for review] serves to dispel any such ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . The burden of securing an adequate record for appellate review of an issue . . . rests with the . . . appellant. . . . Because it is the . . . appellant's responsibility to provide this court with an adequate record for review . . . we will not remand a case to correct a deficiency the . . . appellant should have remedied. . . . Without an adequate record, we can only speculate as to the basis for the trial court's decision. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court." (Citations omitted; internal quotation marks omitted.) *Lambert* v. *Donahue*, 78 Conn. App. 493, 510–11, 827 A.2d 729 (2003). The defen-

dant failed to file a motion for review of the court's denial of its motion for articulation, which requested the court to articulate its decision denying appraisal fees and costs, and has foisted on this court a claim without a record. Likewise, the defendant's claim regarding attorney's fees need not be addressed because the claim is not preserved and is briefed inadequately. The defendant did not request attorney's fees at trial, nor did it address that issue in its motion for articulation. The defendant has failed to cite any authority in its appellate brief to support the request for attorney's fees. Accordingly, we decline to address the question of whether the court improperly denied the defendant's appraisal fees, attorney's fees or costs.

### III

The defendant next claims that the court improperly determined the fair market value of the condemned property by not including certain trade fixtures in its valuation. Specifically, the defendant argues that the court should have considered the unique nature and use of the trade fixtures that were set forth by its appraiser.

"Fair market value . . . involves a question of fact. . . . As with other questions of fact, unless the determination of the trial court is clearly erroneous, it must stand. . . . It is well established that [i]n an eminent domain proceeding, a trial court may seek aid in the testimony of experts, but must ultimately make its own independent determination of fair compensation . . . on the basis of all the circumstances bearing upon value. . . . It is also true that a referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of [our courts] with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence,

his general knowledge and his viewing of the premises." (Citations omitted; internal quotation marks omitted.) *West Haven* v. *Norback*, 263 Conn. 155, 173, 819 A.2d 235 (2003).

Here, the court found that the highest and best use of the subject property for purposes of establishing a fair market value was its then current use as a lobster pound. The court took into consideration in determining the property's value "that a part of a business was conducted on the premises condemned, but [the court] does not consider as a separate element of damages the injury to or even the destruction of that business." The court properly based its valuation on the highest and best use of the condemned property, which included the annexed trade fixtures. The court determined that the highest and best use of the property was the existing use as a wholesale seafood business. The unique nature and use of the trade fixtures were, therefore, included in the valuation of the condemned property.

In essence, the fixture appraisal that the defendant requested to be included was intended to compensate the defendant for its loss of business. "When real property is condemned [however] the general rule is that nothing should be included in the award in the way of compensation for the loss of a business conducted thereon unless specifically authorized by statute . . . ." *Wronowski* v. *Redevelopment Agency*, supra, 180 Conn. 584–85. Further, as discussed in part I, the court properly did not include many of the items in the defendant's fixture appraisal when determining valuation of the property because the items were not trade fixtures and, thus, not part of the condemned property taken by the plaintiff. As for the fixtures that were included properly in the valuation of the condemned property, the court took them into consideration in its valuation of the property as a wholesale seafood

business. Accordingly, the court properly determined the fair market value of the condemned property.

## IV

The defendant's last claim is that the court failed to find that the plaintiff was unable to relocate the business of the defendant. Specifically, the defendant argues in its brief and reply brief that if the court found that the plaintiff was unable to relocate the defendant's business, the plaintiff justly would have to compensate the defendant "for what it has lost, which is its entire economic unit." The relief that the defendant seeks is based on the assembled economic unit doctrine. Because we have declined to adopt that principle of Pennsylvania law, the defendant's last claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.