## EDWARD P. VALLERIE ET AL. *v.* TOWN OF STONINGTON
### (SC 16172)

McDonald, C. J., and Norcott, Palmer, Sullivan and Vertefeuille, Js.

Argued February 18—officially released May 30, 2000

*Benson A. Snaider*, for the appellants (plaintiffs).

*Thomas J. Londregan*, with whom was *Jeffrey T. Londregan*, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiffs, Edward P. Vallerie and Norwest Marine, Inc. (Norwest), appeal from the judgment of the trial court denying their application for relief under General Statutes § 12-119[1] and affirming the determination of the tax assessor of the town of Stonington that the floating docks and finger piers at

---

[1] General Statutes § 12-119 provides in relevant part: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner . . . prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. . . . In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. . . ."

a marina located at 7 River Road in Stonington were real, rather than personal, property. The property at 7 River Road had been owned by Vallerie and was purchased by Norwest on October 20, 1995. We affirm the trial court's judgment.

The following facts are relevant to this appeal. On July 22, 1996, Norwest and Vallerie brought an application for relief against the town of Stonington, pursuant to § 12-119, alleging that the tax assessor's October 1, 1994 and October 1, 1995 valuations of the property in question were manifestly excessive and contrary to law. In that application, the plaintiffs claimed that the tax assessor illegally valued personal property as real property by including floating docks and finger piers at their property as part of the realty. The trial court rejected the plaintiffs' claim, finding that the finger piers and floating docks were fixtures on the property and, therefore, part of the real estate.

The plaintiffs do not quarrel with the trial court's legal conclusion that "[i]n determining whether the docks and [finger piers] are personalty or realty we must first look at whether the docks and [finger piers] are fixtures. If they are fixtures, the personalty becomes part of the property and they are considered realty. *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 215–16, 477 A.2d 988 (1984). To constitute a fixture, we must look at the character of how the personalty was attached to real estate, the nature and adaptation of the docks and [finger piers] to the uses and purposes to which they were appropriated at the time the annexation was made, and whether the annexer intended to make a permanent accession to the realty. Id. The character of the personal property attached to the real estate is determined at the time that the property is attached to the real estate. Id."

The plaintiffs do, however, contest the trial court's determination that the docks and finger piers are fix-

tures. We consider that determination a conclusion of fact. "[W]here the factual basis of the [trial] court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). It is not our function to retry cases. *New Haven Savings Bank* v. *West Haven Sound Development,* 190 Conn. 60, 70, 459 A.2d 999 (1983)." (Internal quotation marks omitted.) *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* supra, 193 Conn. 217. Accordingly, we overturn the trial court's factual conclusions only if they are clearly erroneous. Id., 216–17.

We conclude that the trial court's determination that the floating docks and finger piers are real property was not clearly erroneous. The court found the following facts: "The docks have fresh water and electricity available to boats using the slips. The river has a depth of ten feet at the subject premises. The docks and the slips remain in the water throughout the year. The docks are used to get to the [finger piers] which contain the boat slips. The slips are on open water. The docks and slips float up and down with the tide but are kept in place with seventy to eighty pilings in the river. The docks are attached to bulkheads which are imbedded in concrete. The docks contain utility stanchions with lights that act as street lights. The stanchions also contain lines for water, electricity and telephone service. The water lines are turned off in the winter. There are a total of 133 slips attached to four docks. The docks are periodically removed, repaired and replaced. The economic life of a dock is about fifteen years.

"Prior to October 1, 1996, the owner of the subject property did not declare the docks and [finger piers] at the marina as personal property. For the list of Octo-

ber 1, 1996, [Norwest] filed a list of personal property which contained the docks and [finger piers] at the marina. [Norwest] also filed an amended declaration of personal property for October 1, 1995. The town's assessor considered the docks and [finger piers] to be an integral part of the real estate comprising the marina. The assessor considered the docks to be an improvement to the real estate, and, therefore, part of the real estate, not personal property."

The trial court concluded that: "First, there was no evidence presented to us that the annexer ever claimed that the docks and [finger piers] were personalty as did Norwest when it acquired title in 1995. There was also no evidence presented that the annexer meant the docks and piers to be temporary structures. The main business conducted on the subject premises is that of a marina as a going concern. The marina business at the premises is structured on having docks and finger piers attached to the land by bulkheads and concrete walks, running out into the Pawcatuck River, containing stanchions providing amenities such as electricity and water to the slips, supported by pilings driven into the bed of the river. All of these factors cause us to conclude that the intent of the annexer was to make the docks and [finger piers] a permanent fixture to the land."

We conclude that the trial court applied the correct principles of law to the question before it. See *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, supra, 193 Conn. 215–16. After examining the trial evidentiary record and exhibits, we further conclude that there was substantial evidence to support the trial court's factual findings, and that the court's conclusion that the docks and finger piers were realty was factually supported and logically correct.

The judgment is affirmed.