# STEVEN TALENTI ET AL. *v.* MORGAN AND BROTHER MANHATTAN STORAGE COMPANY, INC., ET AL.
## (AC 29507)

Bishop, Harper and Dupont, Js.

Argued December 10, 2008—officially released April 21, 2009

*Suzanne Lisa Smith*, for the appellants (plaintiffs).

*Barbara M. Schellenberg*, with whom was *Stuart M. Katz*, for the appellee (named defendant).

*Opinion*

DUPONT, J. The plaintiffs, Steven Talenti and his wife, Tonianne Talenti, appeal from the judgment of the trial court dismissing their complaint pursuant to the motion filed by the defendant Morgan & Brother Manhattan Storage Company, Inc.,[1] to dismiss for lack of personal jurisdiction.[2] The plaintiffs claim that the court has personal jurisdiction over the defendant because the defendant maintains its principal place of business in Connecticut, is authorized to do business in Connecticut, accepts service of process in Connecticut and was served properly with process in accordance with General Statutes § 52-57 (c), and they seek redress for acts that took place in Connecticut. We agree with the plaintiffs and, therefore, reverse the trial court's judgment of dismissal and remand the matter for further proceedings.

---

[1] The individual defendant, Jeffrey Morgan, is not a party to this appeal, as he did not contest the court's personal jurisdiction over him. We therefore refer in this opinion to Morgan & Brother Manhattan Storage Company, Inc., as the defendant.

[2] Practice Book § 10-31 (a) provides in relevant part: "The motion to dismiss shall be used to assert . . . (2) lack of jurisdiction over the person . . . ."

The following facts are relevant to the plaintiffs' appeal. They filed a six count complaint against the defendant. In the complaint, the plaintiffs alleged that Steven Talenti had been an employee of the defendant for approximately twelve years when he failed a mandatory company drug test and was summarily discharged at the defendant's corporate headquarters in Greenwich. Immediately thereafter, the defendant, acting through an employee, sent an e-mail from that office to all of its employees in Connecticut, New York and New Jersey, advising that the plaintiff had failed a drug test and had been discharged. In counts one through six of the complaint, the plaintiffs alleged (1) a violation of General Statutes § 31-51x,[3] (2) a violation of General Statutes § 31-51u,[4] (3) invasion of privacy, (4) a prima facie tort, (5) intentional infliction of emotional distress and (6) loss of consortium. The complaint also alleged that the lawsuit "arises under and is governed by the laws of the state of Connecticut."

The defendant moved to dismiss the complaint in its entirety on the ground of a lack of personal jurisdiction.

[3] General Statutes § 31-51x (a) provides in relevant part: "No employer may require an employee to submit to a urinalysis drug test unless the employer has reasonable suspicion that the employee is under the influence of drugs or alcohol which adversely affects or could adversely affect such employee's job performance. . . ."

[4] General Statutes § 31-51u provides: "(a) No employer may determine an employee's eligibility for promotion, additional compensation, transfer, termination, disciplinary or other adverse personnel action solely on the basis of a positive urinalysis drug test result unless (1) the employer has given the employee a urinalysis drug test, utilizing a reliable methodology, which produced a positive result and (2) such positive test result was confirmed by a second urinalysis drug test, which was separate and independent from the initial test, utilizing a gas chromatography and mass spectrometry methodology or a methodology which has been determined by the Commissioner of Public Health to be as reliable or more reliable than the gas chromatography and mass spectrometry methodology.

"(b) No person performing a urinalysis drug test pursuant to subsection (a) of this section shall report, transmit or disclose any positive test result of any test performed in accordance with subdivision (1) of subsection (a) of this section unless such test result has been confirmed in accordance with subdivision (2) of said subsection (a)."

The defendant alleged that because it is a foreign corporation,[5] the plaintiffs must use the Connecticut corporate long arm statute, General Statutes § 33-929 (f),[6] to obtain personal jurisdiction over it but are unable to do so because they are not residents of Connecticut or persons having a usual place of business in this state, as required by the statute. The plaintiffs, in their memorandum of law in opposition to the defendant's motion to dismiss, argued that they obtained personal jurisdiction by serving process on the defendant's vice president, Jeffrey Morgan, at his home in Riverside, and on the defendant's executive vice president, Brian Clark, at the defendant's corporate headquarters in Greenwich. The plaintiffs asserted that they did not utilize the corporate long arm statute, and, therefore, they did not have to meet its residency requirements.

At oral argument before the trial court, the defendant argued that because the corporate long arm statute required that the plaintiffs be residents of Connecticut, "[t]he jurisdictional issue [that was] raised in [their] motion to dismiss is probably erroneously described as

___

[5] The plaintiffs concede that the defendant is a foreign corporation, organized under the laws of the state of New York.

[6] General Statutes § 33-929 (f) provides: "Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."

an issue of personal jurisdiction. . . . Whether or not a plaintiff can bring an action under the long arm statute is truly an issue of subject matter jurisdiction because it goes to the standing of the plaintiff to commence the lawsuit." In response, the plaintiffs maintained that it was an issue of personal jurisdiction and that the court had such jurisdiction. After hearing argument from both the plaintiffs and the defendant, the court granted the defendant's motion to dismiss for lack of personal jurisdiction, stating: "The court finds that (1) the plaintiffs are not Connecticut residents, (2) they do not maintain a usual place of business in Connecticut or (3) their statutory claims are not within the scope of General Statutes § 33-929. Accordingly, they can not maintain an action against a New York corporation [in Connecticut]."

Our review of the court's dismissal is governed by certain well settled principles. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests . . . whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Ertel* v. *Rocque*, 108 Conn. App. 48, 51, 946 A.2d 1251, cert. denied, 289 Conn. 926, 958 A.2d 158 (2008). "[A] challenge to the jurisdiction of the court presents a question of law over which our review is plenary." *Ryan* v. *Cerullo*, 282 Conn. 109, 118, 918 A.2d 867 (2007).

In this appeal, the plaintiffs concede that they are not residents of Connecticut, and, therefore, they are unable to take advantage of Connecticut's corporate long arm statute. They argue, however, that the court should not have applied that statute and its residency requirements to dismiss their complaint because the court instead acquired personal jurisdiction over the

defendant by virtue of the facts that the defendant maintains its principal place of business in Connecticut, is authorized to do business in Connecticut, accepts service of process in Connecticut and that it was served with process in accordance with § 52-57 (c)[7] and they seek redress for acts that took place in Connecticut.

In response, the defendant argues that the court correctly granted its motion to dismiss because § 33-929 (f) is applicable and pursuant to that statute, the plaintiffs lack standing to bring a lawsuit against a foreign corporation in Connecticut because they are not residents of Connecticut or persons having a usual place of business in this state, which implicates subject matter jurisdiction. The defendant concedes that its motion to dismiss was based on lack of personal jurisdiction and that the court treated "the issue before it [as] one of personal jurisdiction," but avers that "[s]ince the trial court made the necessary findings to determine that [the] plaintiffs lacked standing [i.e., the plaintiffs are not residents of Connecticut] the judgment can and should be affirmed on this alternate ground [of subject matter jurisdiction]." The defendant also maintains that because the plaintiffs are nonresidents, the court lacked personal jurisdiction pursuant to § 33-929 (f) as well, and the plaintiffs cannot claim that the court acquired personal jurisdiction by service of process pursuant to

[7] General Statutes § 52-57 (c) provides in relevant part: "In actions against a private corporation, service of process shall be made either upon the president, the vice president, an assistant vice president, the secretary, the assistant secretary, the treasurer, the assistant treasurer, the cashier, the assistant cashier, the teller or the assistant teller or its general or managing agent or manager or upon any director resident in this state, or the person in charge of the business of the corporation or upon any person who is at the time of service in charge of the office of the corporation in the town in which its principal office or place of business is located. In actions against a private corporation established under the laws of any other state . . . service of process may be made upon *any of the aforesaid officers* or agents . . . ." (Emphasis added.)

§ 52-57 (c) because the plaintiffs did not rely on that statute before the court.

## I

We will first address the issue of standing because it presents a question of the court's subject matter jurisdiction.[8] *In re Anthony A.*, 112 Conn. App. 643, 650, 963 A.2d 1057 (2009). We are not persuaded by the defendant's argument that the court's decision to dismiss the plaintiffs' complaint should be affirmed on the ground of lack of subject matter jurisdiction because the plaintiffs lack standing to pursue their causes of action in Connecticut. The defendant bases this argument on its belief that the plaintiffs can obtain jurisdiction over it only through the use of the corporate long arm statute, § 33-929 (f), which allows only a "resident of this state or . . . a person having a usual place of business in this state" to subject foreign corporations to suit in Connecticut. General Statutes § 33-929 (f).

"The issue of standing implicates [a] court's subject matter jurisdiction." (Internal quotation marks omitted.) *Ragin* v. *Lee*, 78 Conn. App. 848, 859, 829 A.2d 93 (2003). "[I]n the absence of standing the court lacks subject matter jurisdiction to determine the merits of the case . . . ." *Sadloski* v. *Manchester*, 235 Conn. 637, 650, 668 A.2d 1314 (1995). "Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with

---

[8] "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Simmons-Cook* v. *Bridgeport*, 285 Conn. 657, 665 n.7, 941 A.2d 291 (2008).

each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . . Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation. . . . Standing can be established by proving statutory or classical aggrievement." (Citation omitted; internal quotation marks omitted.) *PNC Bank, N.A.* v. *Kelepecz*, 289 Conn. 692, 705–706, 960 A.2d 563 (2008).

In this case, the defendant does not claim that the plaintiffs cannot demonstrate aggrievement. Instead, the defendant argues that because the plaintiffs are nonresidents, they cannot take advantage of our corporate long arm statute, and, therefore, they are improper parties to initiate this action. The court rejects this argument.

"Subject matter jurisdiction is the power [of the court] to hear and determine cases of the general [type or] class to which the proceedings in question belong." (Internal quotation marks omitted.) *MBNA America Bank, N.A.* v. *Boata*, 283 Conn. 381, 389, 926 A.2d 1035 (2007). Nothing bars the nonresident plaintiffs in this matter from bringing in this state the type or class of claims alleged in their complaint. Two of the plaintiffs' claims are established by Connecticut statutes, §§ 31-51x and 31-51u. The remaining four, namely, invasion of privacy, a prima facie tort, intentional infliction of emotional distress and loss of consortium, have long been recognized as causes of action, or subject matter, over which the Superior Court has jurisdiction. Undoubtedly, if the defendant were a Connecticut resident, or was otherwise amenable to service of process, as the plaintiffs allege, the Superior Court would have subject matter jurisdiction to decide this dispute. See *University of Connecticut* v. *Atlantic Coast Conference*, Superior Court, judicial district of Tolland, Docket No. X07-CV-03-0082695-S (February 23, 2004) (36 Conn. L. Rptr. 623). Thus, the inability of the nonresident plaintiffs to take advantage of our long arm statute merely deprives them of the opportunity to use that statute to acquire *personal* jurisdiction over a foreign corporation. This impediment does not prevent the court from determining the case once personal jurisdiction over the defendant has been obtained by some other means. See id., 627.[9]

II

We will now consider the plaintiffs' claim that the court improperly dismissed their complaint for lack of personal jurisdiction. Jurisdiction over the person is

___

[9] If the defendant were correct in its assertion that the plaintiffs lack standing to bring suit in Connecticut, that would mean that a nonresident could never initiate a suit in Connecticut, which we know not to be true.

the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. The exercise of this jurisdiction requires (1) the service of process on the defendant, or on his agent for the service of process, (2) the consent to the jurisdiction of the court by the defendant or (3) waiver of any objection to the court's exercise of personal jurisdiction by the defendant. See *Foster* v. *Smith*, 91 Conn. App. 528, 536, 881 A.2d 497 (2005). The consistent constitutional rule is that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant. *Pennoyer* v. *Neff*, 95 U.S. 714, 24 L. Ed. 565 (1878), overruled in part on other grounds by *Shaffer* v. *Heitner*, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977).

The defendant argues that we cannot review the plaintiffs' claim because they did not bring § 52-57 (c)[10] to the attention of the trial court, and, therefore, their claim is unpreserved. In this appeal, the plaintiffs renew substantially the same claim that the trial court rejected, namely: (1) the court has personal jurisdiction over the defendant because the defendant maintains its principal place of business in Connecticut, is authorized to do business in Connecticut, accepts service of process in Connecticut and was served properly with process and (2) the long arm statute should not be applied to their claim because they did not utilize it to obtain personal jurisdiction over the defendant. We are not persuaded, therefore, that in this particular case, the plaintiffs' failure to bring a statute to the trial court's attention renders their claim unpreserved.

We find that there are two bases in this case for the successful assertion of personal jurisdiction over the defendant, decisional and statutory. First, when a foreign corporation complies with the requisites of General

---

[10] See footnote 7.

Statutes § 33-920[11] by obtaining a certificate of authority and complies with the requisites of General Statutes § 33-926[12] by authorizing a public official to accept service of process, it has consented to the exercise of jurisdiction over it by the courts of this state. *Wallenta* v. *Avis Rent A Car System, Inc.*, 10 Conn. App. 201, 207–208, 522 A.2d 820 (1987).[13] "This consent is effective even though no other basis exists for the exercise of jurisdiction over the corporation." (Internal quotation marks omitted.) Id., 208. "Such a corporation has purposely avail[ed] itself of the privilege of conducting activities within [this] [s]tate, thus invoking the benefits and protections of its laws." (Internal quotation marks omitted.) Id., 207. Therefore, when a foreign corporation is authorized to conduct business in this state and has appointed a registered agent, nothing in § 33-929 (f) limits the court's exercise of personal jurisdiction over the corporation. See id., 208 (because defendant consented to personal jurisdiction, plaintiff did not have to establish that defendant made itself amenable to suit). In the present case, there is no dispute that the

[11] General Statutes § 33-920 (a) provides in relevant part: "A foreign corporation . . . may not transact business in this state until it obtains a certificate of authority from the Secretary of the State. . . ."

[12] General Statutes § 33-926 (a) provides that a foreign corporation authorized to transact business in Connecticut must maintain a registered agent. Subsection (b) of that statute provides that a foreign corporation may appoint the secretary of the state to act as its registered agent.

[13] See also *Fudge* v. *Alliant Foodservice, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-01-0812056-S (July 12, 2002) (32 Conn. L. Rptr. 539); *Advanced Technology Enterprises Corp.* v. *Surecomp Services, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-00-0175787-S (November 8, 2000) (28 Conn. L. Rptr. 549); *Wender* v. *Trading Cove Associates*, Superior Court, judicial district of New London, Docket No. 549346 (May 21, 1999); *Granger* v. *Marriott Corp.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-91-398893-S (October 28, 1993); *Xerox Corp.* v. *Axel Johnson Energy Development, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Docket Nos. CV-92-0125804-S and CV-92-0126094-S (April 2, 1993) (8 Conn. L. Rptr. 551); *Daddio* v. *Holiday Inns*, Superior Court, judicial district of New Haven, Docket No. 336126 (March 8, 1993) (8 Conn. L. Rptr. 749).

defendant has registered with the secretary of the state to conduct business in Connecticut, in accordance with § 33-920, and has authorized the secretary of the state to accept service on its behalf, in accordance with § 33-926, as the defendant acknowledged in its oral argument to the trial court. Therefore, the defendant has voluntarily consented to the personal jurisdiction of it by the courts of this state.[14]

The second basis for the assertion of personal jurisdiction lies in § 52-57 (c), which provides that in an action against a foreign corporation, service of process may be made on its vice president. In the present case, the defendant does not dispute that the plaintiffs served the defendant's vice president, Jeffrey Morgan, at his home in Riverside and served the defendant's executive vice president, Brian Clark, at the defendant's corporate headquarters in Greenwich. The court, therefore, acquired personal jurisdiction over the defendant by service in accordance with § 52-57 (c).[15] We conclude that both personal and subject matter jurisdiction exist in this case.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

---

[14] As the defendant has consented to jurisdiction, the exercise of jurisdiction by the court does not violate due process. Therefore, the court does not need to undertake an analysis of any constitutional due process issues.

[15] It is true that General Statutes § 33-929 (c) provides in relevant part that "[w]hen the Secretary of the State [has] been appointed a foreign corporation's registered agent, a foreign corporation may be served by any proper officer . . . by leaving two true and attested copies thereof together with the required fee at the office of the Secretary of the State or depositing the same in the United States mail, by registered or certified mail, postage prepaid, addressed to said office. . . ."

General Statutes § 33-929 (h), however, provides that "[t]his section does not prescribe the only means, or necessarily the required means, of serving a foreign corporation." Thus, service under § 33-929 (c) is permissible, but not mandatory.